**MID CONTINENT MANAGEMENT CORPORATION, Appellant,**

v.

**Barbara DONNELLY, et al., Respondents.**

**No. C8–85–542.**

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Denied Oct. 24, 1985.

Richard J. Gabriel, St. Paul, for appellant.

Owen L. Sorenson, St. Paul, for respondents.

Considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Mid Continent appeals the trial court's ruling denying its action for unlawful detainer and denying its claim for increased rent. We reverse and remand.

## FACTS

On or about August 21, 1979, Barbara Donnelly and Arthur Donnelly (defendants/respondents) entered into a written lease for an apartment with the predecessor in title to Lilydale Investment Company. Appellant Mid Continent Management Corp. was the managing agent for Lilydale Investment Company. The lease began on October 1, 1979 and was to end March 31, 1980. The rent was $550 per month.

The lease included the following language:

(13) RENEWAL OF LEASE. After expiration of this lease, the lease shall automatically renew indefinitely for successive additional 12-month periods for the same monthly rent and on the same terms provided for the original term, except that either party may terminate this lease at the end of the original term, or at the end of any renewal period, by giving the other written notice of termination at least two months prior to the end of this agreement, or the end of a renewal term, as the case may be.

(15) * * * This agreement shall not be altered, amended or extended except by written agreement signed by both parties hereto. * * *

From time to time, the parties negotiated and agreed to increases in the rent pursuant to the terms of the lease. On June 18, 1981, appellant sent the parties a letter notifying them of a rent increase to $640 per month, effective August 1, 1981. That letter included three options for the tenants: (1) to remain on an extended month to month lease at the new rental rate; (2) to remain on a six month lease at the new rental rate; (3) to serve a 30 day written notice of vacating the apartment. Respondents chose to remain on a six month lease.

On October 28, 1982, appellant notified respondents of a rent increase effective December 1, 1982, to $750 per month. In this notice, appellant stated:

I understand that there was some confusion last year concerning the automatic renewal clause in your lease agreement. State Statute Section 504.21 prevents us from automatically renewing your lease as in the past. In reviewing your file your original lease expired on March 30, 1982 and *since that time you have been a month-to-month lessee.*

(Emphasis added).

The parties again disputed the effective date of the rent increase.

On March 28, 1984, appellant notified respondents of a rent increase to $910 per month effective June 1, 1984. Respondents refused to pay the increase, and appellant sued for unpaid rent and unlawful detainer.

The trial court ruled: (1) that the 1979 lease was still in effect, except that by novation it became a six months' lease running from October 1 to March 1, until cancelled by the parties; (2) that the rental increase attempted June 1, 1984 was of no

legal effect; (3) that appellant's claim for increased rent was denied.

Mid Continent appeals this ruling.

### ISSUE

Did the trial court err in denying Mid Continent's action for unlawful detainer and claim for unpaid increase in rent?

### ANALYSIS

Appellant makes two arguments against the trial court's ruling. First, appellant argues that by their actions, the parties terminated the 1979 written lease and converted it into a month-to-month tenancy.

A close review of the facts reveals the accuracy of this argument. The original lease included a term of six months, from October 1979 to March 1981, with an automatic renewal clause for 12-month periods.

In June 1981, appellant gave notice of a rent increase to $640 per month. In response, respondents wrote that they wished to remain on a six month lease at the new rental rate. Respondents had a dispute with appellant about the effective date of that rent increase.

In October 1982, appellant notified respondents of the next rent increase, to $750 per month. That letter also notified appellants that their original lease expired on March 30, 1982, and that they had been month-to-month tenants ever since. Respondents did not object to this letter and paid the rent increase.

Finally, the rent was increased to $910 per month effective June 1984. Respondents refused to pay this increase.

■ Since no definite term was agreed upon by the parties, respondents became month-to-month tenants after March 30, 1982. *See Slafter v. Siddall*, 97 Minn. 291, 106 N.W. 308 (1906); *Shirk v. Hoffman*, 57 Minn. 230, 58 N.W. 990 (1894). *See also* Minn.Stat. § 504.07 (1984).

■ The written lease of August 21, 1979 did not continue in effect. Since reasonable notice was given, the rent increase to $910 per month went into effect in June 1984. Therefore, the trial court erred in denying appellant's claims. We reverse and remand for a determination in keeping with this ruling. On remand, the trial court shall also determine the amount of increased rent due since June 1984.

2. Respondents argue that Minn.Stat. § 504.21 (1984) does not terminate or otherwise void the automatic renewal clause in their lease. *See Kuppers v. Tortora Agency, Inc.*, 63 Misc.2d 656, 313 N.Y.S.2d 225 (1970). Therefore, they argue the 1979 lease is still in effect and the rental price may not be increased without their consent.

That statute provides:

> Notwithstanding the provisions of any lease of real property used for residential purposes, no person shall have the right to enforce any automatic renewal clause * * * unless the lessor or his agent, within 15 days prior to the time that the lessee or tenant is required to furnish notice of his intention to quit, but not more than 30 days prior thereto, shall give to the tenant written notice, served personally or by certified mail, directing the lessee's, or tenant's attention to the automatic renewal provision of the lease.

Minn.Stat. § 504.21 (1984).

We need not address this issue since the terms of the original lease expired in March 1982; since then respondents have been month-to-month tenants.

■ However, we note that nothing in the language of § 504.21 indicates that tenants may enforce an automatic renewal clause if the landlord has not given the statutory notice. Minn.Stat. § 504.21 may have been enacted primarily as a protection against automatic renewal clauses that would trap unwary tenants into additional lease terms they do not want. However, the language could also be interpreted to protect both landlord and tenant from undesired automatic extensions.

### DECISION

We reverse and remand for determination in keeping with this decision.